UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GEORGE ARTHUR CASS,

        Petitioner,

                           CASE NO. 5:13-CV-10984
v.                         JUDGE JOHN CORBETT O'MEARA
                           MAGISTRATE JUDGE PAUL J. KOMIVES

DUNCAN MacLAREN,

        Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     D.    *Ineffective Assistance of Counsel (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     E.    *Gruesome Photographs (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     F.    *Sufficiency of the Evidence (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     G.    *Sentencing (Claims IV & V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
         1.    *Guidelines Scoring* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
         2.    *Judicial Factfinding* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
         3.    *Failure to Consider Rehabilitative Potential* . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
         4.    *Proportionality* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
     H.    *Imposition of Fees (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
     I.     *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 35
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
     J.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

_____

    [1]By Order entered this date, Duncan MacLaren has been substituted in place of Carmen D. Palmer as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner George Arthur Cass is a state prisoner, currently confined at the Kinross Correctional Facility in Kincheloe, Michigan.

        2.      On November 1, 2010, petitioner was convicted of assault with intent to commit murder (AWIM), MICH. COMP. LAWS § 750.83; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Macomb County Circuit Court.  On December 7, 2010, he was sentenced to a term of 13-30 years' imprisonment on the assault conviction, and to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      THE DEFENDANT WAS UNLAWFULLY DEPRIVED OF THE
                EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL
                FAILED TO HAVE THE DEFENDANT EVALUATED AND TO RAISE
                AND PRESERVE PROPERLY AN INSANITY OR TEMPORARY
                INSANITY DEFENSE.

        II.     THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF
                HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED
                RIGHTS UNDER THE UNITED STATES AND MICHIGAN
                CONSTITUTION WHEN IT ADMITTED INTO EVIDENCE ONE OR
                MORE GRUESOME PHOTOGRAPHS.

        III.    THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF
                HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED
                RIGHTS UNDER THE UNITED STATES AND MICHIGAN
                CONSTITUTIONS WHEN IT ENTERED A JUDGMENT OF

CONVICTION AND SENTENCE AS TO THE AWIM CHARGE ON EVIDENCE THAT IS INSUFFICIENT TO SUPPORT THE CONVICTION.

IV.   THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTIONS WHEN IT SCORED 10 POINTS ON OV-4.

V.   THE TRIAL COURT UNLAWFULLY VIOLATED THE UNITED STATES AND MICHIGAN CONSTITUTIONS IN SENTENCING THE DEFENDANT TO A PRISON TERM OF 156-360 MONTHS ON THE AWIM CONVICTION.

VI.   THE TRIAL COURT UNLAWFULLY DEPRIVED THE DEFENDANT OF HIS DUE PROCESS, EQUAL PROTECTION, AND OTHER PROTECTED RIGHTS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTIONS WHEN IT ORDERED HIM TO REIMBURSE THE COUNTY ATTORNEY FEES IT PAID TO TRIAL COUNSEL WITHOUT FIRST HOLDING A HEARING TO DETERMINE IF HE HAD THE PRESENT AND FUTURE ABILITY TO PAY THEM.

The court of appeals found no merit to petitioner's claims, and affirmed his convictions and sentences. *See People v. Cass*, No. 302032, 2012 WL 975014 (Mich. Ct. App. Mar. 22, 2012) (per curiam).

4.   Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Cass*, 492 Mich. 869, 819 N.W.2d 910 (2012).

5.   Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on March 5, 2013. As grounds for the writ of habeas corpus, he raises the six claims that he raised in the state courts.

6.   Respondent filed his answer on September 11, 2013. He contends that petitioner's fourth claim is barred by petitioner's procedural default in the state courts, and that all of petitioner's claims are without merit.

3

7.     Petitioner filed a reply to respondent's answer on October 18, 2013.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the shooting of his girlfriend Laurel Henderson, which left Henderson paralyzed from the waist down. The evidence adduced at trial was accurately summarized by the Michigan Court of Appeals:

> Defendant and Henderson had been in a relationship for 12 years and had been living together for 10 of those years. On February 28, 2010, Henderson and defendant attended a chili cook-off cancer fundraiser together at Coyote Station, a bar less than a mile from their home. After a while, defendant said he was going to walk home. Henderson told defendant she could give him a ride, but then she started talking to someone and, when she turned to look for defendant, he was gone. Defendant seemed "a little aggravated" when he told Henderson he was going to leave. Henderson stayed at the bar to watch the hockey game and arrived home at approximately 7:00 p.m.
>
> When Henderson walked in, defendant was "furious." He told Henderson he had been calling her and accused her of ignoring his calls. Defendant went into the family room and watched television while Henderson went and watched television in the living room. She made something to eat and then fell asleep on the couch.
>
> Defendant had gone to bed, but he woke up a few hours later and started screaming at Henderson again. Henderson told defendant, "I don't need this," or "I'm out of here." Defendant "stomped out" to the garage and "stomped right back" about a minute later, approached Henderson, pressed a gun up against her, and shot her. She was close to the front door, so she crawled on her stomach to the door and opened it. She was half in and half out of the house, pushing the screen door open. Henderson called 911, told them she had been shot, gave them her address, and then yelled for help. Defendant then came and stood over Henderson, with one foot between her legs, and shot her twice in the back as she was lying on her stomach. He said, "Take that, b* * * *."
>
> Casey Taylor lived across the street from Henderson and defendant. Taylor was at home watching television at about 10:00 p.m. on the night of February 28, 2010, when he heard a loud noise. He went outside to investigate and saw Henderson's dog in the street with no one around. He heard Henderson yell, "help me." Taylor grabbed his shoes and cell phone and ran over to Henderson's home where he saw Henderson in the front doorway, "face down, half sticking out of the house, with the screen door pushing against her." Henderson told Taylor, "he shot me . . . in the chest . . . three times." Defendant was lying on the floor behind Henderson, about 10 feet away, and appeared to be sleeping.
>
> Henderson was shot once in the upper left chest area, once in the lower back on the right side, and once in the middle of the back. One of the bullets hit her

4

bladder and kidney, and she is now paralyzed from the waist down.

Defendant testified to a different version of the facts, proceeding under a theory of self-defense. Defendant had congestive heart failure, emphysema, high blood pressure, and arthritis in his spine and neck. He and Henderson drank together every day. Past arguments have turned physical. On February 28, 2010, defendant and Henderson went to the bar at about 2:30 p.m. Defendant had two beers and two shots, and left to walk home at 4:30 p.m. because he wanted to watch a Nascar race. When he got home, he watched the race and drank some wine. Henderson arrived home at about 10:00 p.m., rather than 7:00 p.m., as Henderson testified. Henderson came into the family room, where defendant was watching television, and asked if he wanted a beer. He said "no," and Henderson went to get one for herself out of the refrigerator in the garage. When she came back into the family room, defendant complained to her that she had stayed at the bar hours longer than she said she would and that she did not return his calls. They got into a heated argument. Defendant was "a little bit" angry with Henderson, and Henderson was angry with him. She started "beating on" defendant while he was sitting on the couch; she punched him in the face, bit his ear half off, and punched or kicked him in the back after he fell on the floor on his stomach.

Eventually, Henderson left the room, and defendant got up. Defendant's gun was either in or on top of a big china cabinet in the family room and, while Henderson was in the living room, defendant reached up and got the gun. Because he was bleeding, he went into the bathroom, with the gun, and dabbed his face, ear and arm. Defendant then went to lie down in the bedroom to see if he could calm down, but he did not, so after a few minutes he got back up and walked toward the kitchen. Henderson was walking toward him. Defendant was upset and did not know what Henderson was going to do, so he fired a shot into the ceiling. Henderson kept coming at him so he shot at her. He was not really aiming when he fired the first shot that hit Henderson, and said he shot from a short distance away. Henderson then started to turn and defendant shot her again, catching her in the hip area. Defendant then passed out with Henderson lying next to him on the floor. He did not remember a third shot, nor did he recall saying "take that, b* * * *," although he admitted it was possible. He never stood over Henderson and shot straight down into her back. The next thing defendant recalled was police or EMS telling him he was hurt and taking him in an ambulance to St. John. Defendant got five or six stitches in his ear. The parties stipulated that his blood alcohol content was .31 at 11:40 p.m. that night.

Defendant testified he was afraid for his life and he shot Henderson in self-defense. Henderson got angry very easily, that "you cannot talk to [her]," and that she was "always an aggressor ." He was not sure why he stayed with her, testifying that at first they were very happy but that their relationship has since deteriorated.

Doctor Werner Spitz testified for defendant as an expert in forensic pathology. Henderson's bullet wounds were inconsistent with a person standing over her, while she lay flat on her stomach, and shooting her in the back. He opined the chest shot was fired while Henderson was bent forward in an "aggressive stance,"

but admitted her wounds are also consistent with a person lying on her left side when she was shot. Spitz opined the first shot to Henderson injured her spinal cord and that she could not have remained standing afterward (and it was Spitz's understanding that she did) unless defendant was supporting her in some way. Spitz also opined Henderson could not have "wriggled" away from the spot where she was first shot because of this injury and, therefore, the prosecution's theory, that the shots went in more on her side than her back because of any such movement, was implausible, though possible. Spitz believed all three shots to Henderson were fired in quick succession. Spitz also testified the bullet wound in Henderson's chest area was caused by a shot that was fired eight to ten inches away from her body. He could tell this because he saw gunpowder specks in her skin ("stippling") around the wound.

*Cass*, 2012 WL 975014, at *1-*3

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

6

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Ineffective Assistance of Counsel (Claim I)*

In his first claim, petitioner contends that his trial counsel was ineffective for not having him evaluated for purposes of a temporary insanity defense based on involuntary intoxication. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*. With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before

9

the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.  It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

  2.    *Analysis*

Petitioner contends that counsel should have investigated a defense of temporary insanity caused by involuntary intoxication. Petitioner recognizes that voluntary intoxication is not a defense under Michigan law, but argues that his "pathological intoxication" is a form of involuntary intoxication which may be used to support an insanity defense. The Michigan Court of Appeals rejected this claim, explaining:

> While voluntary intoxication is not an affirmative defense, an affirmative defense of insanity may be based upon involuntary intoxication. *People v. Caulley*, 197 Mich App 177, 186-187; 494 NW2d 853 (1992). "Involuntary intoxication is intoxication that is not self-induced and by definition 'occurs when the defendant does not knowingly ingest an intoxicating substance, or ingests a substance not known to be an intoxicant.'" *Id*. at 187, quoting *People v. Low*, 732 P.2d 622, 627 (Colo 1987). The defendant must show that "the involuntary use of drugs created a state of mind equivalent to insanity." *Caulley*, 197 Mich. App at 187.
>
> Defendant argues that he was deprived of the opportunity to raise an insanity defense based upon "pathological intoxication" because he was an alcoholic who had no control over whether or not to consume alcohol. "Pathological intoxication" is described as a form of involuntary intoxication that is self-induced "in the sense that the defendant knew what substance he was taking, but which was 'grossly excessive in degree, given the amount of the intoxicant.' " LaFave, Criminal Law (2d ed), § 9.5(g), p 56. To be pathologically intoxicated, the defendant must be unaware that his ingestion of the intoxicant would produce an atypical reaction. *Id*. Defendant's argument is without merit. Pathological intoxication is not a recognized defense in Michigan, MCL 768.21 a(2), and defendant fails to provide any authority to the contrary.
>
> Moreover, there is no evidence in the record that the consumption of alcohol by the defendant was anything but voluntary. The evidence established defendant voluntarily consumed alcohol on the day of the shooting. He admitted to drinking two beers and two shots at the bar and drinking more wine when he arrived home. Defendant's BAC was .31 one and a half hours after the shooting. In fact, defendant testified regarding the shooting incident with surprising clarity given his extremely high BAC. Defendant's Presentence Investigation Report (PSIR) does indicate he abuses alcohol and has several drinks every day, but this merely establishes that he may be an alcoholic or an addict. The PSIR also shows defendant reported no mental health concerns. At sentencing, defendant stated that he "never had a problem with drinking." All evidence points toward defendant's intoxication being voluntary,

> rather than involuntary, and, therefore, inadequate to form the basis for an insanity defense where there is no indication defendant suffered a "settled condition of insanity before, during, and after the alleged offense." *Caulley*, 197 Mich. App at 187 n 3. Defendant could not have presented a meritorious insanity defense in light of the circumstances and, therefore, counsel was not ineffective in failing to have defendant evaluated or to raise an insanity defense. *See People v. Snyder*, 239 Mich. App 393, 425; 608 NW2d 502 (2000).

*Cass*, 2012 WL 975014, at *4. This determination was reasonable.

As the court of appeals observed, "[u]nder Michigan law an individual who is voluntarily intoxicated does not have grounds for an absolute defense based upon his insanity." *Hoss v. Jackson*, No. 99-CV-73582-DT, 2000 WL 1137731, at *14 (E.D. Mich. July 13, 2000) (Zatkoff, J.) (citing *People v. Caulley*, 197 Mich. App. 177, 187, 494 N.W.2d 853, 858 (1993)); *see* MICH. COMP. LAWS § 768.29a(2) ("An individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances."). While voluntary intoxication cannot form the basis of an insanity defense, Michigan courts have previously held that voluntary intoxication may have been so severe that it negated the specific intent element of a specific intent crime–where the defendant is "intoxicated to the point at which he was incapable of forming the intent to commit the charged crime," *People v. Mills*, 450 Mich. 61, 82, 537 N.W.2d 909, 920 (1995); *People v. Savoie*, 419 Mich. 118, 133-34, 349 N.W.2d 139, 146 (1984); *People v. King*, 210 Mich. App. 424, 428, 534 N.W.2d 535, 536 (1995). In *People v. Carpenter*, 464 Mich. 223, 627 N.W.2d 276 (2001), the Michigan Supreme Court held that the detailed procedures for asserting an insanity defense set forth in the statute signifies the legislature's intent "not to allow evidence of a defendant's lack of mental capacity short of legal insanity to avoid or reduce criminal responsibility by negating specific intent. Rather, the insanity defense as

established by the Legislature is the sole standard for determining criminal responsibility as it relates to mental illness or retardation." *Id*. at 241, 627 N.W.2d at 285; *see also*, *Patterson v. Metrish*, No. 2:08-CV-12041, 2010 WL 5280815, at *7-*8 (E.D. Mich. Dec. 17, 2010) (Battani, J.). Nevertheless, although voluntary intoxication is itself a form of the diminished capacity defense, the Michigan Supreme Court in *Carpenter* expressly declined to address its prior decisions recognizing voluntary intoxication as a defense to specific intent crimes. *See Carpenter*, 464 Mich. at 239 n.10, 627 N.W.2d at 284 n.10.  However, the Michigan legislature subsequently abolished voluntary intoxication as a defense to "any crime," MICH. COMP. LAWS § 768.37(1), and thus voluntary intoxication is no longer a defense to a crime, either through a showing of insanity or inability to form specific intent.

Involuntary intoxication, on the other hand, may be a defense to a crime under Michigan law. However, as the Michigan courts have explained "[i]nvoluntary intoxication is intoxication that is not self-induced and by definition occurs when the defendant does not knowingly ingest an intoxicating substance, or ingests a substance not known to be an intoxicant." *Caulley*, 197 Mich. App. at 187, 494 N.W.2d at 859 (citation and quotation omitted).  There is nothing in the record to suggest that petitioner did not knowingly ingest alcohol, or that he did not know that alcohol is an intoxicant.  Indeed, petitioner does not argue to the contrary.  Rather, petitioner argues that he had no control to refrain from consuming alcohol, and thus suffered from "pathological intoxication," which itself constitutes a form of involuntary intoxication.  The Michigan Court of Appeals, however, determined that "[p]athological intoxication is not a recognized defense in Michigan." *Cass*, 2012 WL 975014, at *4; *accord People v. Saffell*, No. 306103, 2012 WL 5870266, at *2 (Mich. Ct. App. Nov. 1, 2012) (per curiam); *People v. Boyett*, No. 303075, 2012 WL 1020234, at

13

*2 (Mich. Ct. App. Mar. 27, 2012) (per curiam); *People v. Coronado*, No. 302310, 2012 WL 470188, at *2 (Mich. Ct. App. Feb. 14, 2012) (per curiam).  In analyzing petitioner's ineffective assistance of counsel claim, this expression of state law is binding on this Court.  *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999).  *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action.").  And in light of this determination, petitioner cannot show that counsel was ineffective for failing to investigate this defense.  Counsel is not deficient by failing to pursue a line of defense foreclosed by state law.  *See Bennefield v. Kirkpatrick*, 741 F. Supp. 2d 447, 453 (W.D.N.Y. 2010); *Boyce v. Commissioner, Maine Dep't of Corrections*, 217 F. Supp. 2d 108, 124 (D. Me. 2002); *Provenzano v. Singletary*, 3 F. Supp. 2d 1353, 1367 (M.D. Fla. 1997).

Moreover, petitioner cannot show a reasonable probability that he would have had a viable defense even if pathological intoxication were otherwise recognized under Michigan law.  Contrary to petitioner's argument, pathological intoxication does not refer to a person's inability to control the decision of whether to consume alcohol.  Rather pathological intoxication is, "'a condition, quite rare, in which an individual exhibits sudden and unpredictable behavior very shortly after ingesting a very small amount of alcohol.'" *Lopez v. Ryan*, 630 F.3d 1198, 1200 (9th Cir. 2011) (quoting *State v. Lopez*, 857 P.2d 1261, 1267 (1993)). Or as the court of appeals explained, quoting from the LaFave treatise upon which petitioner himself relies, pathological intoxication occurs where the voluntary ingestion of an intoxicant produces an unexpected and atypical reaction.  *See Cass*, 2012 WL 975014, at *4; *see also*, *State v. McClenton*, 781 N.W.2d 181, 189 (Minn. Ct. App. 2010) (pathological intoxication is "intoxication grossly excessive in degree, given the amount of the

intoxicant, to which the actor does not know he is susceptible.")   Here, petitioner had consumed copious amounts of alcohol, as evidenced by his 0.31 blood alcohol content one and a half hours after the shooting.  Nothing in the record suggests that petitioner had an atypical reaction in light of the amount of alcohol consumed.  *Cf. State v. Young*, 999 P.2d 230, 238 (Hawai'i 2000) (long term substance abuse does not constitute pathological intoxication).  Thus, petitioner cannot establish prejudice, even if a pathological intoxication defense were recognized under Michigan law. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Gruesome Photographs (Claim II)*

Petitioner next contends that he was denied a fair trial by the admission of photographs of the victim's gunshot wounds.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law

15

itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).  In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also, Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

Under Michigan law, "[i]f photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they vividly portray the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion and prejudice of the jury." *People v. Hoffman*, 205 Mich. App. 1, 18, 518 N.W.2d 817, 826 (1994).  As a federal constitutional matter, "[t]he admission of relevant photographs of a crime scene or victim, even if gruesome, does not deprive a criminal defendant of a fair trial." *Skrzycki v. Lafler*. 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004) (Gadola, J.); *see also, Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997) (admission of gruesome photographs generally does not "raise[] the specter of fundamental unfairness such as to violate federal due process law."); *Pearl v. Cason*, 219 F. Supp. 2d 820, 830 (E.D. Mich. 2002) (Edmunds, J.) ("[A] challenge to the admission of a gruesome

16

photograph does not present a question of constitutional magnitude."); *cf. Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005). Because "[t]he location of the wounds and the trajectory of the bullets were key issues in this case, and the photographs were highly relevant in helping the jury determine whether Henderson's testimony was accurate and in evaluating [petitioner's] self-defense claim," *Cass*, 2012 WL 975014, at *6, their admission did not deprive petitioner of a fair trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Sufficiency of the Evidence (Claim III)*

Petitioner next contends that the prosecution presented insufficient evidence to prove his guilt of assault with intent to commit murder. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what

17

inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is

18

purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16). Michigan law provides that "[a]ny person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony[.]" MICH. COMP. LAWS § 750.83. Under this provision, "the crime of assault with intent to commit murder requires proof of three elements: '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 581 N.W.2d 753, 759 (1998); *People v. Hoffman*, 225 Mich. App. 103, 570 N.W.2d 146, 150 (1997)). As with other mental-state elements, intent to kill need not be proved by direct evidence, but rather may be proved by circumstantial evidence and reasonable inferences drawn from the evidence. *See Warren*, 161 F.3d at 360; *Hoffman*, 225 Mich. App. at 111, 570 N.W.2d at 150.

2.    *Analysis*

Petitioner contends that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that he acted with the requisite intent to kill, and to prove beyond a reasonable doubt that he did not act in lawful self-defense. The Michigan Court of Appeals rejected this claim, reasoning:

> Here, the evidence, when viewed in the light most favorable to the prosecution, shows defendant woke Henderson up by screaming at her, then went out to the garage, got his gun, came back in the house, aimed the gun at Henderson, and shot her in the chest at point-blank range. He then shot her twice more in the posterior flank area after she had fallen to the ground. At some point during the shooting, defendant said to Henderson, "Take that, b * * * *." Henderson's bladder, one of her kidneys, and one of her lungs were injured by the bullets, and she suffered a spinal injury that has paralyzed her for life. This evidence, when viewed in the light most favorable to the prosecution, was sufficient to allow a reasonable trier of fact to conclude that each element of assault with intent to murder had been proven beyond a reasonable doubt.

19

*Cass*, 2012 WL 975014, at *6.  The Court should conclude that this determination was reasonable.

With respect to petitioner's intent to kill, the victim's testimony, if believed by the jury, clearly establishes that petitioner shot her several times in the torso, including in the chest area.  *See O'Hara v. Brigano*, 499 F. 3d 492, 500 (6th Cir. 2007) (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005) ("Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict.").  As explained above it is well established that "[t]he specific intent to kill may be proven by inference from any facts in evidence."  *Warren*, 161 F.3d at 361 (internal quotation omitted).  Specifically, and in addition to other factors, the Court "may take into consideration 'the nature of the defendant's acts constituting the assault . . . [and] whether the instrument and means used were naturally adapted to produce death[].'"  *Id*. (quoting *People v. Taylor*, 422 Mich. 554, 375 N.W.2d 1, 8 (1985)).  Petitioner's act of firing a gun at Henderson multiple times and at close range is sufficient evidence from which the finder of fact could infer beyond a reasonable doubt that petitioner intended to kill the victim.  *See Johnigan v. Elo*, 207 F. Supp. 2d 599, 608 (E.D. Mich. 2002) (Steeh, J.); *People v. Ritsema*, 105 Mich. App. 602, 609, 307 N.W.2d 380, 383 (1981); *People v. Johnson*, 54 Mich. App. 303, 304, 220 N.W.2d 705, 706 (1974).  Petitioner nevertheless contends that the number and location of the shots evinces an intent to do great bodily harm, not an intent to kill.  This argument is without merit.  Petitioner fired multiple shots into the victim's torso at close range, one directly into the chest.  From this a jury could infer that petitioner intended to kill the victim.  The fact that the jury could also infer that petitioner only intended to commit great bodily harm is irrelevant; the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient.  *See Jackson*, 443 U.S. at 326.

20

Likewise, the prosecution presented sufficient evidence to prove beyond a reasonable doubt that petitioner did not act in lawful self-defense. Self-defense is available under Michigan law only if the defendant honestly and reasonably believes both (1) that he is in imminent danger of death or great bodily harm, and (2) that it is necessary for him to exercise deadly force. *See People v. Riddle*, 467 Mich. 116, 119, 649 N.W.2d 30, 34 (2002). Where a defendant raises a claim of self-defense and supports the claim with some evidence, the prosecution bears the burden of negating the defense beyond a reasonable doubt. *See People v. Reese*, 491 Mich. 127, 155-56, 815 N.W.2d 85, 101 (2012); *People v. Dupree*, 486 Mich. 693, 710, 788 N.W.2d 399, 408 (2010).[2] While petitioner

---

[2]Notwithstanding that Michigan law places the burden of negating self-defense on the prosecution, some courts have held that a challenge to the sufficiency of the evidence on this basis is not cognizable on habeas review. Those courts have explained:

> Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree*, 486 Mich. 693, 704, 712, 788 N.W.2d 399 (2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155, n. 76, 815 N.W.2d 85 (2012) (quoting *Dupree*, 486 Mich. at 704, n. 11, 788 N.W.2d 399). Although under Michigan law the prosecutor is required to disprove a claim of self-defense, *See People v. Watts*, 61 Mich.App. 309, 311, 232 N.W.2d 396, 398 (1975), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required...." *See Smith v. United States*, ⸺ U.S. ⸺, ⸺, 133 S.Ct. 714, 719, 184 L.Ed.2d 570 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)). The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) (Blackmun, J., dissenting) ("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233–36, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); *see also Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir.1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir.1986)). Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir.1999). Petitioner does not challenge the sufficiency of the evidence in support of the essential state law

testified the victim was beating him and that he was afraid for his life when he shot the victim, the victim testified that petitioner shot her when she attempted to leave the house because he was mad at her for staying out late.  Under the victim's version of events, petitioner was not in imminent danger of death or great bodily harm, nor was it necessary for him to use deadly force.  Further, the victim's version of events was supported by the fact that two of petitioner's shots were into the victim's back, and that she was shot near the door of the home.  It was the job of the jury to resolve the conflict between the victim's version of events and that of petitioner, and the jury resolved that conflict in favor of the prosecution.  As noted above, the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses. The jury, as the finder of fact, was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution.  In light of the victim's testimony, the verdict was not "so insupportable as to fall below the threshold of bare rationality."  *Coleman*, 132 S. Ct. at 2065.  It follows that the court of appeals's rejection of this claim was reasonable, and petitioner therefore is not entitled to habeas relief on his sufficiency of the evidence claim.

G.     *Sentencing (Claims IV & V)*

---

elements of voluntary manslaughter and felony-firearm; rather, "he has only faulted the jury's refusal to credit his proffered affirmative excuse or justification" for the killing. *Id.* As such, petitioner's claim that the prosecutor failed to disprove his affirmative defense is non-cognizable on habeas review. *Id.*; *Allen v. Redman*, 858 F.2d at 1200.
*Buckner v. Tribley*, No. 2:12-CV-12592, 2013 WL 1414438, at *6 (E.D. Mich. Apr. 8, 2013) (Rosen, J.); *see also*, *Flanagan v. Burt*, No. 1:13-cv-831, 2013 WL 5673529, at *6-*7 (W.D. Mich. Oct. 17, 2013); *Anderson v. Woods*, No. 12-10456, 2013 WL 2242448, at *5 (E.D. Mich. May 21, 2013) (Battani, J.). Respondent does not argue that petitioner's claim is not cognizable, and in any event as explained below the prosecution presented sufficient evidence to negate petitioner's self-defense claim beyond a reasonable doubt.  Thus, the Court need not resolve whether this claim is cognizable on habeas review.

Petitioner next raises various challenges to his sentencing. The Court should conclude that each of these claims is without merit.[3]

1.    *Guidelines Scoring*

Petitioner first contends that the trial court erred in scoring 10 points on Offense Variable 4 (OV-4) in computing the sentencing guidelines. The Court should conclude that petitioner is not entitled to habeas relief on these claims. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas

---

[3]Respondent contends that petitioner's fourth claim is barred by petitioner's procedural default in the state courts. While procedural issues in a habeas case should ordinarily be resolved first, procedural default is not jurisdictional, and "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also, Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Because it is clear that petitioner's fourth claim is without merit, the Court may deny the claim on the merits without addressing respondent's procedural default argument.

23

review).  Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

Moreover, even if this claim were cognizable, petitioner cannot show that the trial court erred in scoring the guidelines. OV-4 requires the assessment of 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim." MICH. COMP. LAWS § 777.34(1)(a). "In making this determination, the fact that treatment has not been sought is not conclusive." MICH. COMP. LAWS § 777.34(2).  At sentencing, the victim described "the emotional and physical pain" caused by petitioner's crime as "unbearable," and stated that she "cr[ies] every day."  Sentence Tr., at 17-18.  Further, petitioner informed the probation officer preparing petitioner's presentence report that she could not "express that psychological damage" that the crime had on her, and that although she had "not sought treatment yet, [she had] checked into Turning Point for counseling referrals." *Cass*, 2012 WL 975014, at *8.  These statements from the victim regarding the psychological impact of the crime on her were sufficient to support the scoring of OV-4.  *See People v. Gibbs*, 299 Mich. App. 473, 493, 830 N.W.2d 821, 831 (2013); *People v. Williams*, 298 Mich. App. 121, 124, 825 N.W.2d 617, 673 (2012).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.    *Judicial Factfinding*

Petitioner also argues that the scoring of OV-4 was improper because it was based on facts found by the trial judge at sentencing, not on facts found by the jury, in violation of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond

24

a reasonable doubt." *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines.  The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed.  The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).  Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. *See Booker*, 543 U.S. at 233, 237-43.

   *Blakely* and *Apprendi*, however, are inapplicable here.  Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*.  Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence.  The maximum sentence is not determined by the trial judge but is set by law.  *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); Mich. Comp. Laws § 769.8.  "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within

25

which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the armed robbery charge, therefore, contained all of the factual findings necessary to impose the statutory maximum (life imprisonment) on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris*

26

*v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted). Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment, as both the Sixth Circuit and the Michigan Supreme Court have repeatedly held. *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684

27

N.W.2d at 286 n.14.

This conclusion is not altered by the Supreme Court's more recent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). In that case, the Court overruled *Harris*, and extended *Apprendi* to facts that increase a mandatory minimum sentence. Reasoning that the *Harris* Court's distinction between facts that increase the statutory maximum and facts that increase a mandatory minimum is inconsistent with *Apprendi*, the Court in *Alleyne* held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2155 (citation omitted). The Court was careful to note, however, that its ruling "does not mean that any fact that influences judicial discretion must be found by a jury." *Id*. at 2163. Judges retain broad discretion to impose any sentence within the range authorized by law based on the jury's findings (or the facts admitted in a plea), and may judicially find facts in exercising this discretion. *See id*.

*Alleyne* is inapplicable here. *Alleyne* dealt with statutory mandatory minimum sentences, as opposed to facts used to determine the minimum sentence of an indeterminate sentencing scheme such as Michigan's. Therefore, "[i]t is questionable whether *Alleyne* applies to Michigan's sentencing scheme." *Spears v. Curtin*, No. 1:13-cv-1013, 2013 WL 5636625, at *6 (W.D. Mich. Oct. 16, 2013). More importantly, even if *Alleyne* now bars judicial factfinding under the Michigan sentencing scheme, it does not constitute "clearly established federal law" under § 2254(d)(1) for purposes of petitioner's claim. At the time the Michigan Court of Appeals rejected petitioner's *Apprendi* claim, *Alleyne* had not been decided and the Court's decision in *Harris* made clear that

28

the Michigan Court of Appeals's rejection of petitioner's claim was proper.  The rule of *Alleyne* was not clearly established at the time the state courts rejected petitioner's claim, and thus it provides no basis for habeas relief under § 2254(d)(1).  *See Kittka v. Franks*, 539 Fed. Appx. 668, 672 (6th Cir. 2013); *Williams v. Smith*, No. 11-15163, 2014 WL 632437, at *7 (E.D. Mich. Feb. 18, 2014) (Lawson, J., adopting report and recommendation of Komives, M.J.); *Stockman v. Berghuis*, No. 2:10-CV-14860, 2013 WL 6885121, at *14 (E.D. Mich. Dec. 31, 2013).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3. *Failure to Consider Rehabilitative Potential*

Petitioner also contends that the trial court erred in failing to consider his rehabilitative potential in imposing sentence.  This claim is without merit.  Although the Supreme Court has held that individualized sentencing is required in the death penalty context, *see, e.g.*, *Tuilaepa v. California*, 512 U.S. 967, 972 (1994); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976), these cases "have repeatedly suggested that there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties." *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (citing *Eddings v. Oklahoma*, 455 U.S. 104, 110-112 (1982); *Rummel v. Estelle*, 445 U.S. 263, 272 (1980); *Lockett v. Ohio*, 438 U.S. 586, 602-05 (1978); *Woodson*, 428 U.S. at 303-05).  Based on these cases, the *Harmelin* Court explicitly declined to extend the individualized sentencing requirement to non-capital cases.  *Harmelin*, 501 U.S. at 996 ("We have drawn the line or required individualized sentencing at capital cases, and see no basis for extending it further."); *see also*, *id*. at 1006 (Kennedy, J., concurring).  Likewise, nothing in the Constitution requires a state to establish its system of criminal sanctions to give primacy to any one penological goal.  *See Harmelin*, 501 U.S. at 999 (Kennedy, J.) ("[T]he Eighth Amendment does not mandate

adoption of any one penological theory."). Thus, the trial court's alleged failure to consider petitioner's rehabilitative potential provides no basis for habeas relief.

4.  *Proportionality*

Finally, petitioner contends that his sentence was disproportionate to his offense. To the extent that petitioner relies on the Michigan proportionality rule established in *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), his claim is solely one of state law which is not cognizable on federal habeas review. *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.). To the extent petitioner claims that his sentence violates the Eighth Amendment, the claim is without merit.

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment requires that "a criminal sentence be proportionate to the crime for which the defendant has been convicted." *Id.* at 290. In considering whether a sentence is proportionate, the Court identified three objective factors which are relevant: "(I) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id*. at 292. Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id.* at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent decisions. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the

30

Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are 'grossly' disproportionate to the crime. *See id*. at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id*. at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id*. at 1005-06.[4] Thus, it is unclear whether, and to what extent, *Solem* remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized, under *Harmelin*, "although only two Justices [Rehnquist and Scalia] would have held that the eighth amendment has no proportionality requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality." *United States v. Hopper*, 941 F.2d 419, 422

---

[4] Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

(6th Cir. 1991).  At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended only by an extreme disparity between crime and sentence").  Thus, as a general matter, "one could argue without fear of contradiction by any decision of the [Supreme] Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative."  *Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id*. at 997-1001 (Kennedy, J.).

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*. In *Ewing v. California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id.* at 23-24 (opinion of O'Connor, J.) Justice O'Connor was joined in this position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains no proportionality requirement outside of the capital sentencing context. Justice Scalia, now joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id.* at 32 (opinion of Scalia, J.); *id*. at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as

32

by Justices Ginsburg and Breyer, who were not on the Court when *Harmelin* was decided. *See id.* at 33-35 (opinion of Stevens, J.); *id.* at 36-37 (opinion of Breyer, J.).  Thus, although the particular Justices attached to each position have changed somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether the sentence is grossly disproportionate to the offense, *see Coleman v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under *Ewing*.

Here, the *Harmelin* plurality's "threshold comparison" of petitioner's crime and the sentence imposed, does not "lead to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, and thus the Court should conclude that petitioner is not entitled to habeas relief on this ground. Petitioner was convicted of assault with intent to commit murder, an offense carrying a maximum sentence of life imprisonment.  *See* MICH. COMP. LAWS § 750.83.  The evidence showed that petitioner shot the victim three times inflicting, among other injuries, a spinal cord injury rendering the victim paralyzed.   In these circumstances, petitioner's combined sentence of 15-32 years' imprisonment on the assault and felony-firearm convictions is not disproportionate to his offense. *See Bryant v. Yukins*, No. 01-CV-70657, 2001 WL 1218778, at *3 (E.D. Mich. Aug. 17, 2001) (Tarnow, J.) (upholding sentence of 22-60 years' imprisonment on assault with intent to commit murder); *Carter v. Henderson*, 602 F. Supp. 1186, 1188-89 (S.D.N.Y. 1985) (upholding sentence of 15 years' to life imprisonment for attempted murder).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Imposition of Fees (Claim VI)*

Finally, petitioner contends that the trial court erred in imposing attorney fees pursuant to

MICH. COMP. LAWS § 769.1k[5] without considering his ability to pay.  The Michigan Court of Appeals rejected this claim.  Relying on the Michigan Supreme Court's decision in *People v. Jackson*, 483 Mich. 271, 769 N.W.2d 630 (2009), the court of appeals held that "a defendant's constitutional rights are not violated when a trial court fails to hold a hearing to determine an indigent defendant's ability to reimburse the state for court-appointed attorney fees at the time the court imposes an order to pay.  The constitution requires only that an ability-to-pay hearing be held at the time of enforcement of the order."  *Cass*, 2012 WL 975014, at *11.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

The habeas statute provides that a federal court may entertain a habeas application from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Because an order imposing fees or costs has no bearing on the validity or duration of a prisoner's custody, a challenge to such an order is not cognizable under § 2254.  *See Washington v. McQuiggin*, 529 Fed. Appx. 766, 772-73 (6th Cir. 2013); *Ashby v. Paine*, 317 Fed. Appx. 641, 642 (9th Cir. 2008); *Gray v. Perry*, No. 10-cv-13340, 2010 WL 3952848, at *2 (E.D. Mich. Oct. 7, 2010) (Duggan, J.).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides

---

[5]Section 769.1k requires a sentencing court to "impose the minimum state costs as set forth in" § 769.1j, which in turn provides for a minimum state cost of $68.00 in the case of a felony conviction. MICH. COMP. LAWS § 769.1k(1)(a) (citing MICH. COMP. LAWS § 769.1j).  Section 769.1k further authorizes, but does not require, the imposition of "[a]ny fine," "[a]ny cost in addition to the minimum state cost," and "[t]he expenses of providing legal assistance to the defendant."  MICH. COMP. LAWS § 769.1k(b).

that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

      2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. Because an insanity defense based on intoxication was not available to petitioner as a matter of state law, the conclusion that counsel was not ineffective for failing to investigate such a defense is not reasonably debatable. Further, because the victim's testimony was sufficient to establish that petitioner acted with the intent to kill and did not act in lawful self-defense, and because it is clear that a victim's testimony alone may support a jury verdict, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable. Because it is clear that the *Apprendi* rule does not apply to Michigan's indeterminate sentencing scheme (or at least did not apply at the time the court of appeals considered this claim), the resolution of petitioner's *Apprendi* claim is not reasonably debatable. Finally, for the reasons discussed above, it is clear that petitioner's claims relating to the admission of photographs, the scoring of the sentencing guidelines, the failure to consider his rehabilitative potential at sentencing, and the imposition of fees do not present cognizable grounds

for habeas relief.  Thus, the resolution of these claims is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


Date: March 31, 2014                                    s/Paul J. Komives
                                                        PAUL J. KOMIVES
                                                        UNITED STATES MAGISTRATE JUDGE



                              <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2014.


                                            s/ Kay Doaks
                                            Case Manager